THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT IS NOW OPEN AND IN SESSION. GOD SAVE THE UNITED STATES AND THIS HONORABLE COURT. Good morning, ladies and gentlemen. We have six cases on our calendar this morning. Four patent cases, one for the PTO, one for the District Courts. I've been protesting for the federal claims of an employee case. And in that case, in one of your patent cases, two patent cases are submitted. And I'll read them out to you. The first case is MEMORYLINK CORP v. MOTOROLA, 2010-15-33. Mr. Schaffman. Good morning, Your Honor. May it please the Court. My name is Paul Schaffman. I represent the plaintiff, Appella Emery Corporation. This is a denotable review of the Northern District of Illinois, Rule 12b-6, Dissolution of the Pleas. This Court has jurisdiction under 28 U.S.C. because this patent attorney malpractice case necessarily involves federal law. I would like to begin by turning our attention to the attorney-client relationship, where the District Courts made incorrect rulings about when the attorney-client relationship began and when it ended. But to take a step back, the thing I don't understand in this case are arguments and conclusions that imply that in-house attorneys operate under different ethical rules than law firm attorneys. For example, to me, to argue that a patent law firm is not retained until the formal patent office power of attorney is executed, to argue that an attorney-client relationship with a patent law firm did not exist when the patent law firm had received confidential proprietary information for the purpose of running a prior art search and expressing a legal opinion after patent eligibility, to me, to argue that a patent law firm had done nothing to terminate the attorney-client relationship, they had not withdrawn as attorneys of record under 37 CFR 133, they had not revoked the power of attorney under 37 CFR 136a, they were still paying maintenance fees on an issue patent, they were still the principal attorneys of record on still pending patent applications, to argue that these patent attorneys had somehow inferentially terminated the attorney-client privilege. Most of this now practice seems to be too late in terms of both patents, I believe 352, this certainly was plenty of opportunity for everyone to share their knowledge of the fact that this is a motor law firm, the matters were being added, and in respect to 938, patent issue more than six years before the roundhouse, well in the absence of fraudulent concealment it may well have been too late, but here we have a strong case of fraudulent concealment, here we have attorneys who entered into an inherent conflict of interest, never a private client, but they were entering into an inherent conflict of interest, and thus they breached their duty to disclose material facts, here we have, we're talking about the motor law attorneys, well quite obvious that they were representing the motor law amendments, and as well as the memory link amendments who signed the power of attorney, and so they were representing both clients, that's absolutely correct, and they had duties to both of those clients, but the initial duty was to inform memory link that they were entering into an inherent conflict of interest, and then memory link could choose to waive that conflict by written waiver, memory link was never even informed of that conflict of interest, and one cannot expect lay people to understand the attorney conflict of interest rules, in addition those attorneys then favored the interest of one client over the interest of another client, both in the inventorship determination, which erroneously listed Motorola inventors, as well as a faulty assignment document, they never apprised memory link of that, thus, I'm sorry, no, thus they did breach their duty to disclose material facts, you mentioned the assignment document, and I'm a little unclear, this is a factual matter, of how the assignments, this is back in June of 98, how does the assignments operate, because we have in the record two documents, and there are references in the record to two different documents, one of which I think appears at A279, which appears to assign the rights of the inventors to Motorola solely, and the other at A70 through 71, which appears to assign the rights of the inventors to Motorola and memory link jointly, what, sort that out for me, which one is operating, which one, was there a sequence of events, or what, the briefs don't spell it out, I'm sorry, we don't think either one of them is operative, because we don't think that there was a consideration for an assignment, because the basis of the assignment is in front, I'm giving you just the facts, as to what happened, because these two look inconsistent to me, the inventors assigned the patent jointly to Motorola and memory, okay, later Motorola rather filed an assignment document with the patent office, and they neglected to list memory link as a joint owner, they only listed Motorola as a joint owner, so on the face of the patent, Motorola is listed as a sole assignment, even though that's not supported by the inventors assignment, even though it's not true, and we believe that's an operative fact in the underlying scheme here, and that was to have a patent issued in Motorola's name, and we believe that Motorola's competitors would believe it was Motorola's patent, well, I didn't understand, I understood your focus in the prior action, and this action would be on the inclusion, excuse me, the inclusion of the Motorola inventors, or the Motorola employees, as inventors, rather than deception, or even blackout, fraud, whatever, as to the conversion from jointly Motorola and memory link into Motorola alone, there wasn't a conversion, they simply filed an erroneous cover sheet with the assignment of the patent office, but the effect of that was the patent would then issue only with Motorola's name on the face of it, so it would appear to the world as Motorola's patent, well, when you say appear to the world, does that mean that it wasn't only Motorola's patent, it actually belonged to both Motorola and memory link, it was legally assigned jointly to Motorola and memory link, okay, so memory link, you say memory link actually has a legal interest in this patent, well, they have a legal interest in the patent, all right, that answers my question, so it never was really legally assigned to Motorola, no, it's not just to Motorola, they have an interest in the patent, but it's an interest that was assigned under what I call the negative assignment, which merely said the parties jointly owned this, as your honors are aware, under federal patent law, that results in a rather unique circumstance, it's not the same thing as real property, if you and I jointly own real property, and you make money off of it, I get an accounting, I get to get some of those profits, under joint patent ownership, either one of us could exploit that patent without giving any accounting, without answering to the other owner, and so even the patent office website has a provision, except that the other owner can also keep you from exploiting the patent, by refusing to agree for a patent or a license, no, they absolutely not, under 35 U.S.C. 262, either owner can exploit that patent without any accounting to the other owner, they can license it, they can get royalties for it, the only thing you can't do is file an infringement suit, that's true, that's true, and again, so we couldn't even file an infringement suit with our ownership, that's exactly right, exactly, now what this did though was, it allowed memory, or Motorola rather, to put this patent into their patent pool, with their competitors, where they have pick agreements, and what these pick agreements do is, if you and I are competitors, I get to pick a certain number of patents, that you license, this is interesting, but I don't see how it goes with the statute of limitations, which is the only issue that we're really trying to figure out, so if you don't mind, I'd like to turn back, in particular, the 938 patent, which is running out of time, I don't mean to cut you off, but the 938 patent, one thing Motorola argues, and I'd like to hear your response, is that the issuance of the patent itself, should constitute public, free notice, and that even if their filing of the application, was fraudulent, at the time they were at least starting to deal with the patent issue, so how do you respond to that? I'd back up one step, and I reject this idea, that you could dissect this case, into two different cases, one related to one patent, and the other related to the secret patent, I think it's all the same case, it's a single malpractice case, but to your point, if you were on notice with regards to any of this, then the statute of limitations would start ticking, and this case would have gone on. That's true, so having said that, I think the Federal Circuit case law is clear, that while there is a, there is a, some areas, like for licensing and ownership areas, where there is a provision, where once a patent issue is constructed, you put on notice of the issuance of that patent, I think it's clear that, for something substantive like this, the case law is clear that, simply because a patent issue, you are not put on actual notice, or constructive notice, of the existence of that patent. What case law is clear? I can give that to you in a second. In fact, I only have 15 seconds left, so I'll give that to you under a bubble. I will have to give that to you under a bubble, I don't have it with me right now. Here's the case, it begins with A, which I'll give latches, which is quite the same. It's not the same, but it's the same logic, and it's the same principle, that both are equitable principles, and the standard was the same, whereas new or reasonably should have known, which is the same standard here, so the same, even though it's a little bit different, it's both equitable principles, and they're both the same standard. If, unless you have any more questions, I prefer to come back up. Thank you. Thank you. Who is the story of these two assignments? How did this go from assignment, which the name was to Mogo, and then you made the assignment to Mogo alone? My name is Nancy Drees, and I represent the defendants of the case to the record. Your Honor, my understanding is that the assignment was executed by the parties of June the 5th, June 11th, and 12th, assigning the captain to both of Mogo and Rayford, who had four employees, two of which were Mogo employees. I think when it got filed, my understanding is that when it was filed with the captain's office, the recognition sheet only showed that Mogo would be assigned, but the full assignment was included with that. There was no dispute in this action. That was the full assignment part. Again, good morning. May it please the Court, issued before the Court is the application of the Illinois statute of repose of statute of limitations. Under Illinois public policy and finality, those two statutes, two year and six years, bar this case in the lower court properly, dismiss this action as time barred. The statute of repose is most dispositive in this case, and under that statute, a legal malpractice claim may not be commenced more than six years, catching the last day on which the alleged malpractice act occurred or admission occurred. It's hard and out of the limit. It applies to irrespective... Unless there's structural concealment, and that's what they're alleging here, that you all hid, for example, the filing of the patent application with out-of-receipt manufacturers in America. The statute of repose begins to run irrespective, initially, of the fraudulent concealment. That's a tolling mechanism, so unlike the statute of limitations, that begins to run when a plaintiff knows or should have known, the statute of repose, irrespective of that, starts on the last day the act or admission occurred. The fraudulent concealment can toll the statute, but the start date continues. And if, under Illinois law, the discovery or the concealment arises during the statute of repose period, fraudulent concealment has no application, which is what we argue occurred here. Your argument of the patent's issuance... I'm sorry, I missed the last part. I'm sorry. There are two patents that issue here, the 352 patent and the 938 patent. With respect to the 938 patent, which we say the statute of repose began to run on the issuance date, that patent was issued on 6-3-0-3. At that point, the statute of repose began to run because that was the last act or admission relating to that patent. It began to run. Their argument, then, is that the fraudulent concealment tolled the statute of repose, which otherwise would have expired in June of 2009. The complaint was filed in November of 2009. Their argument is that it tolled it. Judge Schindler, or the lower court, correctly held that if and when... Assume for argument's sake that they could allege fraudulent concealment, which we deny because of the issuance, but even if there was concealment, it has no application where the fraudulent concealment is uncovered or the plaintiff discovers their claim within the statute of repose period. Here, that is, the statute of repose here began on 6-3-0-3, expired 6-3-0-9. Memory Link alleges in its complaint that it discovered the cause of action in November of 2007 within the statute of repose period. As a matter of law, that fraudulent concealment does not apply. It has no application. And as the Illinois courts have held, in a number of courts, it has no application. But if the after omission is compiled, which is one of the things that they're arguing, then it wouldn't be uncovered within the statute of repose, right? Well, with respect to the 9-3 patent, if I think that's what you're talking about, the 9-3 patent, the alleged malpractice omissions are threefold. They allege that we omitted to tell, or that the defendants omitted to tell Memory Link about the filing of the 9-3 patent and that they weren't included as inventors. They also then allege in the complaint that we failed to notify them of the prosecution of the patent in July of 2002. So it's another omission. And then the last omission is that we didn't tell them of its existence and issuance in June of 2003. Therefore, the trigger date for statute of repose under the 9-3, I think is not questionable. It is the issuance date when it begins to start. And therefore, as Judge O'Leary held, the discovery, the admitted alleged discovery of the 9-3 patent, the inventors, and its cause of action within the six-year repose period makes the fraudulent concealment have no application here. Your opponent says that clear case law, which we could have caught at the moment, not indicates that the patent granted date isn't necessarily public notice. I think the case he's referring to is Advanced Cardiovascular, which is referred to. I haven't correctly pointed out that that was a latche's case that applied the newer, should have known standard, which is similar to the statute of limitations standard. Our argument is that that case has no application here because it was looking at an equitable doctrine. And unlike statute of repose, it is not, the trigger date, again, is not based on equitable doctrine. In any event, while we do maintain, maintain to the lower court that issuance of the patent means there is no concealment, so we do argue there's no concealment, as this court properly, as this court mentioned. It is clear that as a matter of law, if the statute of repose began on 6-3-0-3-7-9-3, it doesn't matter since they allege they discovered it on November 27th of 2007 within the repose period. Do you see as the effect of Manna-Wolkoff's participation in the review of the assignment? Yes. So the, there's two patents at issue here, the ninth grade patent, which we just talked about. I'd like you to continue to address the plaintiff's interpretation of that relationship. Okay. The payment relationship comes into play with respect to 352. Right. And that's the case with respect to what you're expecting of the ninth grade, they obviously weren't involved. Focusing on the assignment issue. Well. At least they weren't. So Banner, as alleged in the complaint is, and it's not disputed here, was at least involved in patent counsel for Memory Lane on or before January 27th, 2003. At that point, the record is clear and it's alleged in the complaint and documents are attached that Banner was looking at the 352 patent, that it was, it filed a divisional application on behalf of Memory Lane and in the letter attached to the complaint that the record 8228, Banner sends a letter, Banner and Memory Lane's counsel sends a letter to Motorola stating and questioning, modifying the ownership, which is in fact the assignment. So our position for the statute of limitations argument with respect to the 352 and really with respect to fraudulent concealment as it applies to 352, that no matter what, Memory Lane knew, or should have known, of the facts underlying this alleged injury. Now, with respect to Banner and Woodcuff's expression of concern about ownership, do we have in the record anything more specific about exactly what aspect of the ownership they were focusing on that you can give me on that? In the record, they, point to, I think 8228 is modifying the assignment. That's a January 27th or 29th letter. In the complaint, it also refers to the fact that they were looking at the assignment. Banner, in July 29th of three, and there's a letter I think, sorry, I don't know the exact site for the record, but it's right here. Banner sends another letter talking about the assignment and changing the assignment to try to, for Memory Lane to try to get ownership alone. And it actually, it starts dragging. So ownership for Memory Lane. It starts dragging. That would ultimately be because of Memory Lane's position at that point. I'm asking you rather what it's saying, but that the two Motorola employees were not true inventors, was that the rationale for that argument, or was there any other reason? No. I mean, that's not in the record. I mean, that's in the other underlying complaint, which is really not part of this record, and I don't think that's been made at all in this case. Certainly, it's not part of the record. What is said is that part of the record is that Banner was looking at the underlying facts and the issues that are the assignment and the ownership. And what the case law said in Sound of Music, in UNICEF, and other cases, that if and when there's a lawyer, a plaintiff's lawyer, that knows of the underlying facts, that whether or not they understand the cause of action that ultimately is part of the injury, that's imputed knowledge. So Banner comes into play for our purposes with respect to the statute of limitations that we should have nominated in January of 2003, which then would have expired in January of 2005, five years before they filed the complaint. It's a unique case here because what we have is a... I'm sorry. Let's see if I can answer this way. I'm not going to speak very clearly. Is there anything in the record that reflects that Banner and Woodcock were inverting specifically to the problem of the additional inventorship designations for the two motor oil companies? What plaintiffs... I believe what you're asking is were they questioning the mentorship? Yes. No. And they... I don't think they... I think that's great that they did not need to. I think what is at issue is the underlying alleged malpractice acts with respect to 352 were supposedly defendants better to advise the legal standard regarding inventorship, the legal significance of the assignment, and the fact that defendants allegedly represented that the two motor oil employees needed to be armed. The patent. That occurred... That all occurred in June of 1998. The lower court held that at that point the trigger date newer should have known. We agree. But our position is that irrespective if the case law is clear that whether or not they were questioning inventorship, Banner in January of 03 looked at inventorship. They filed a division and made a determination of who should be inventors and who should not be and included the same four individuals. So the fact that they looked at patent and inventorship, the fact that they looked at the assignment, the same issues that became the lawsuit six years later is unquestionably imputed knowledge and it certainly doesn't support a project concealment with respect to the 352 patent. Moving to the back to the 938 patent, we again, the allegations with respect to the 938 patent are threefold. As I mentioned to Your Honor, is the disclosing of the application, the patent prosecution which occurred in 02, and then again the existence and the issuance of the patent in 03. So we maintain and judge that we're found that the statute of recourse triggered in 03. There is again no dispute that they discovered during the period. Similarly, with respect to the 352 patent, if this court decided that the correct... If we were to find though that the actual mission was the filing of the 938, then it would not have occurred. What is your response then? It's not you can't get out of jail free which is the idea that they discovered during the period on statute of recourse. If this court found the 938 trigger date was the June 98 date of filing the application, if this court found that the June 1998 filing date for the 938 patent occurred, then the statute of recourse period would have expired in June of 2004. And our position would be that it expired. We would then argue that the public notice,  was meant that there was no longer concealment at that time. Our position is, which I think I've said is that, here is the statute of recourse and here in paragraph 47 of the complaint at page 63, the plaintiff specifically stated that one of the omissions with respect to the 938 patent was the responding to the office action and the prosecution. The Mauer... When you say one of the omissions, it doesn't mean the omission which is the filing of the application of forming them doesn't trigger the statute of recourse. Well, it does under Illinois law. Under Mauer and under FRCA, you look at when the... On a transaction context like this, you look at the last act on which the alleged malpractice omission occurred. And the Mauer versus Rubin, Fricka versus Bauer both found the case that you look at when the work product issued, or when it was the final work product. In this case, that would be the issuance of the patent. It states that if there is after that some sort of continuing duty to correct or disclose, that's not going to delay it. But the statute of recourse is considered to be the last act under Illinois law. I understand Illinois law not to require accrual of the cause of action to divorce any circumstances that wouldn't be in particular accrual from triggering the statute of recourse. Is that correct? I think the way the statute works is there's no accrual in that there is no new or should have known standard. But it is considered clearly in a transactional context the last act. And the courts look at in Mauer, for instance, they look at when the divorce agreement was finally issued and ordered by the court. That was the last act. And then to the extent that it's silenced afterwards. But whereas here there's three discrete omissions, the last act is looked at as a trick by Mauer. The only way the fraudulent concealment would come into place is if after the trigger date material facts were concealed. And we just believe that it's not the case here. The concealment, while I'm going to flip through real quickly back to the 352 patent, we allege that under the, or we argue that under clear Illinois law there must be material facts that were omitted. That was not the case with the 352. And there's no allegations of complaint that say there were. Finally, my few last seconds, I didn't touch really on the statute of limitations, but our position is that the claims are equally barred under the statute of limitations, although we don't believe the court needs to get there. And then finally, our other independent basis for dismissal was with respect to the four individual Motorola in-house lawyers and Motorola where we maintain independently for the lower court that there was no claims of no alleged facts showing a breach. And then under Trombley that they, therefore the claims against those individuals should not be maintained. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Initially, I am not smart enough. But all these different dates are getting banned due to Rochester. I can't follow them. It's pretty clear that what happened here happened in June 1998 when they filed the two applications. When they didn't advise about inventorship, when they didn't advise about joint ownership. To say that every time they then file a complaint, they then didn't tell MemoryLink that they had done that thereafter, keeps the statute of repose open, just seems like a catch-22. It'd be the same thing as saying in the Deluna case, every time the attorneys in Deluna didn't tell the plaintiffs that they had filed the complaint without the required affidavit, every time they didn't tell that to the plaintiffs, that somehow would keep the statute of repose going. It just makes no sense. But you specifically alleged in your complaint that it was prosecution constituted a separate actor of omission, another one and issuance constitutes another actor of omission. So it's not that they are saying just any event or day-by-day transgressions, but rather they're pointing to allegations. I don't think our allegations say that at all. I think our allegations are pointing at all of the different times when they should have told us about their omission and didn't tell us about their omission. Every time they communicated or should have communicated with us, they should have told us about what they had done and they didn't tell us about what they had done. And again, every time Deluna communicated with his attorneys to say that that was another act or omission and that that was a fact of issues, how can you simply say further concealment and that it was public? I understand that your individuals are lawyers, but it's a public fact. But there's, first of all, again, the advanced cargo bastard case, I believe it is fraud, but it's still an equitable proposition. And that case makes a strong case that you shouldn't have a plaintiff lose their rights because of constructive notice. Beyond that, to even suggest that somehow MemoryLink or even Banner should have assumed that Motorola had taken MemoryLink's invention, filed a second patent on it without telling them and they should go to the patent office and say, well, Motorola lawyers did something unethical and I don't think that was their obligation to assume that. I don't think that's a responsibility to assume that. This was a very complicated scheme as a legislative complaint and it's difficult to me to imagine penalizing lay people here at MemoryLink because they weren't able to uncover that complicated scheme and rewarding the defendants for the sophistication and the subtleties of that scheme. And I think that's exactly why fraudulent concealment applies here. The only thing even remotely available out there was this assignment. And to view that assignment in a vacuum without knowledge that they had played games with the inventorship, without knowledge that they had played games      scheme. And the only way that I could explain that is that the Illinois law is actually clear and that is that the knowledge that subsequent lawyers have is not necessarily attributed to the   DeLuna, the trial attorneys didn't file the affidavit. The case was dismissed. Appellate attorneys joined the team and they knew that the affidavit hadn't been filed. To attribute that knowledge of the appellate lawyers to the DeLunas would have meant that the DeLunas wouldn't have had a role in the trial. And    DeLunas    role in the trial. The DeLunas wouldn't have had a role in the trial. So I think that the DeLunas wouldn't have had a      that  DeLunas    role in the trial. I think that the DeLunas wouldn't have had a role in the trial. I think that the  wouldn't have  role in the trial. I think that  DeLunas wouldn't have had a role in the trial. I think that DeLunas wouldn't have had a role in the trial.        role in the trial. I think these format the highest merit. And again, I think Banner, I absolutely don't think Banner did anything wrong. I think Banner had every right to rely on original and better determination. Under Illinois law, it's clear that new attorneys who join a team are not required to go back and expensively interview all of the work that was previously done. And so, I agree that Banner did nothing wrong. Thank you.